[S. F. No. 12399. In Bank.—October 31, 1929.]

HARRY W. LOBB, Appellant, v. FRANK ARTHUR BROWN et al., Respondents.

Hadsell, Sweet & Ingalls, Earl Warren and Ralph E. Hoyt for Appellant.

Byrne & Lamson, Brobeck, Phleger & Harrison, F. Eldred Boland and Knight, Boland & Christin for Respondents.

Sloss & Ackerman, Maurice E. Harrison, M. C. Sloss, Stoney, Rouleau, Stoney & Palmer and Henry E. Monroe, *Amici Curiae.*

CURTIS, J.—This action was instituted for the purpose of having it declared that the defendants hold in trust for the plaintiff certain real and personal property received by them under decrees of partial distribution in the estate of Mary Ellen Moore, deceased.

Mary Ellen Moore at the time of her death was about eighty-two years of age. Her home had been in Alameda, in the county of Alameda, where she had resided many years immediately preceding her death. The defendants are brothers and were nephews of the deceased. They had been reared by her and had spent most of their lives with her. The decedent had made a prior will to that which was filed and probated as her last will and testament. In this prior will the defendants were made residuary legatees, and after certain bequests to friends and acquaintances of the decedent, the residue of her estate, approximating in value $200,000, had been devised and bequeathed to defendants. Shortly before her death she executed a second will. In this will the plaintiff was named as the executor thereof, and he and the defendants were named as residuary legatees. This second will contained the following provision, therein designated as paragraph eighteen, which was not found in

her former will: "If any person named herein, or unnamed herein, shall institute proceedings in anywise contesting this my last will and testament, then I give, devise and bequeath to such person or persons the sum of One Dollar ($1.00), and no more. In the event of any person named herein contesting this will, then the share of said person mentioned in this will shall go to the residuary legatees or legatee not contesting."

Mary Ellen Moore died at her home on August 14, 1920. On September 2, 1920, the will hereinbefore referred to as her second will was duly admitted to probate as her last will and testament and the plaintiff, Harry W. Lobb, was appointed executor thereof. On September 8, 1920, the law firm of Byrne & Lamson, representing both of the defendants, Frank A. Brown and Herbert E. Brown, filed in the office of the county clerk of Alameda County their notice of appearance and demand for notices as such attorneys as provided by section 1380 of the Code of Civil Procedure. Thereafter two petitions for partial distribution of certain portions of said estate were filed by the defendants, Frank A. Brown and Herbert E. Brown, and the court in response to said petitions made two decrees, one dated January 17, 1921, and the other, October 10, 1921, by which it distributed to Frank A. Brown and Herbert E. Brown certain real and personal property of said estate of the approximate value of $120,000. Between the dates of said two decrees of partial distribution and on June 9, 1921, George J. Moore and certain named stepchildren of the decedent, Mary Ellen Moore, hereinafter referred to as the Moore heirs, filed a contest directed solely to that portion of the last will and testament of Mary Ellen Moore by which there was bequeathed to the plaintiff herein, Harry W. Lobb, one-third of the residue of said estate. One of the grounds upon which this contest was based was alleged to be undue influence of this plaintiff, Harry W. Lobb, in securing the execution of said will by the decedent. In this contest proceeding the plaintiff and the defendants were made parties defendant therein. Frank A. Brown and Herbert E. Brown appeared therein by their attorneys, Messrs. Byrne & Lamson, and filed an answer to said contest. In their answer they denied that the contestants had any interest in the estate of the decedent which would entitle them to contest

her will. They did not deny, however, the charge made by contestants that the residuary clause of her will in so far as it provided that the said Harry W. Lobb should be entitled to one-third of the residue of said estate was invalid by reason of the undue influence practiced on decedent by the said Harry W. Lobb. The contest was tried by the court sitting with a jury, and resulted in an order of court discharging the jury and dismissing the proceeding. This order was dated September 14, 1922.

In the present action, it is charged by the plaintiff in his complaint that the defendants, Frank A. Brown and Herbert E. Brown, ''and each of them, did contest said last will and testament of Mary Ellen Moore, deceased, in violation of the eighteenth paragraph thereof and did seek to destroy and render of no effect the residuary clause in said will in so far as it bequeathed to Harry W. Lobb one-third of the residue of said estate.'' The complaint then set forth certain acts of the defendants, and of their attorneys, Messrs. Byrne & Lamson, which were alleged to have been done during the pendency of the said contest proceeding and during the trial of said proceeding in the Superior Court of Alameda County, and which, it was alleged, were done for the purpose of and which actually did aid and assist the contestants in their attempt to have declared invalid that portion of the last will and testament whereby Harry W. Lobb was bequeathed one-third of the residue of said estate. The defendants filed separate answers in which they made substantial denial of all of the allegations of the complaint embodying the charge that they had contested or had assisted in the contest of the last will of the decedent. The action was tried and the court made and filed its findings of fact and conclusions of law, upon which judgment was rendered in favor of the defendants. From this judgment plaintiff has appealed.

The court found that it was ''not true that defendant Frank A. Brown did contest said last will as mentioned in said complaint or at all.'' In addition to this finding the trial court found certain specific acts to have been committed by the said Frank A. Brown and the said Herbert E. Brown in connection with the proceeding brought and prosecuted to contest the will of said decedent. The court made no

definite finding as to whether or not Herbert E. Brown contested said will.

The appellant contends that the finding of the court that Frank A. Brown did not contest the will of decedent is merely a conclusion of law, and that the special findings of the court as to the specific acts of these defendants show conclusively that each of them did contest the will of said decedent, and thereby forfeited his right to the real and personal property bequeathed and devised to him in said will. Whether the finding of the court that Frank A. Brown did not contest the will of said decedent is a finding of fact or a conclusion of law it would be controlled by the specific findings of the court as to the acts of Frank A. Brown committed by him in connection with said contest proceeding if there is any conflict between the general finding and the specific findings. Treating it as a conclusion of law, it must find support in the other findings of the court which are in fact findings of fact, and unless it is so supported, it must fall. Treating it as a general finding, and the findings of the court as to the particular acts of Frank A. Brown as specific findings, the latter must control in case of any inconsistency between said general finding and said specific findings. (*Turner* v. *Turner*, 187 Cal. 632 [203 Pac. 109]; *Estate of Ross*, 187 Cal. 454 [202 Pac. 641].) It follows, therefore, that the validity of the judgment must be determined by a consideration of the specific findings relative to the acts of the defendants in connection with the institution and prosecution of said contest. There are other questions raised, such as the capacity of the plaintiff to maintain this action, and the misjoinder of defendants and of causes of action, but in the view we take of this action, it will not be necessary to pass upon these questions.

The specific findings of the court as to the particular acts committed by the respondents in the matter of the contest of the decedent's will instituted by George J. Moore and others, and which acts of the respondents the appellant claims constituted a contest of said will by respondents, and, therefore, worked a forfeiture of the bequests and devises to which the respondents would otherwise be entitled to receive and hold under said will, may be for convenience divided into three classes: (1) Those

which relate to both of the respondents, (2) those which relate to Frank A. Brown, and (3) those which relate to Herbert E. Brown. These we will discuss in the order named.

First: The court found that neither of said defendants knew that any contest of said will had been instituted until after the same had been brought by the contestants; that defendants filed their answer in said contest proceeding, but in said answer they did not deny those allegations in the petition alleging acts of undue influence; that they were represented in said contest proceeding by the firm of Byrne & Lamson; that J. S. Lamson of said firm attended the trial of said contest during three or four days of said trial, which lasted for nine days; that on one occasion during the trial of said contest, but at a time when the jury was not present, the said J. S. Lamson, in answer to a question propounded to him by one of the attorneys for the proponents in said contest, stated, "I have no hesitancy in saying that we would like to see the contestants succeed in the case" and further, in answering a question as to whether "you have a financial interest in it if they do," replied, "there is no doubt about that."

Second: The court found that the attorney for the contestants Mr. McWilliams called upon Mr. Lamson and asked to have an interview with Frank A. Brown regarding the contest that he had instituted to have certain portions of the will of the decedent declared invalid. At first Mr. Lamson refused Mr. McWilliams' request, but later arranged a meeting between Mr. McWilliams and Frank A. Brown. Thereafter, Frank A. Brown was subpoenaed as a witness at the trial of said contest, and testified to certain facts within his knowledge regarding said decedent and her business affairs. He also produced certain papers which he had secured from the home of the decedent after her death and prior to the appointment of an executor of her will. These papers, or at least a portion, were offered in evidence by the attorney for the contestants and by order of court were admitted in evidence. During the trial of said contest, a man by the name of A. W. Porter met Frank A. Brown on a ferry-boat running between San Francisco and Oakland and volunteered to be a witness in the contest proceeding. Frank A. Brown informed

him that Mr. McWilliams was handling the case for the contestants and the next day informed Mr. McWilliams of the conversation with Porter. Mr. McWilliams stated that he would like to meet Porter and Frank A. Brown replied, ''The next time I see him if I see him in the next day or two, I will tell him that you want to see him.'' Frank A. Brown thereafter saw Porter on the ferry-boat and told him that McWilliams wanted to see him, and arranged to meet him at McWilliams' office a few days later. The meeting at McWilliams' office was held as planned, with the result that Porter later testified as a witness in favor of the contestants. The court further found that Frank A. Brown did not ''attempt in any way to establish the interest of contestants in said estate, or that he had any purpose except that of attending as a witness in obedience to a subpoena and answering truthfully such questions as were put to him.'' The court also found that Frank A. Brown did not pay ''to the contestants or to their attorney, or to any of them, any sum or sums of money whatever for any purpose, or at any time.''

Third: Herbert E. Brown did not attend the trial of the contest of decedent's will. The court found, however, that through his attorney, J. S. Lamson, he paid to Robert L. McWilliams, attorney for contestants, the following sums of money: $100 on September 4th, $100 on September 13th, $506.40 on September 25th, and $100 on September 28th, 1922. The trial was begun on August 30, 1922, and, as before stated, lasted nine days. The court found that the money paid to McWilliams was used by him for the payment of the expenses or attorney's fees of the trial of said contest except the sum of $100, which was paid for the purpose of prosecuting an appeal from the judgment rendered and ''that at the time said Herbert E. Brown delivered said money to said J. S. Lamson, he knew that said money was to be so used and thereafter knew that the same was so used.''

While the foregoing does not comprise all the findings of fact made by the court, it does set forth the more salient and important facts embodied in said findings. The findings themselves are voluminous and cover eighteen pages of the typewritten record. The foregoing facts as set forth above, we think, will sufficiently present the cause of the

484

respective parties and permit the application of the principles of law governing their rights in this controversy.

■ That a provision in a will providing for a forfeiture of a legacy in the event of a contest of the will by the legatee is valid and binding upon said legatee has been held frequently by this court. (*Estate of Hite,* 155 Cal. 436 [17 Ann. Cas. 993, 21 L. R. A. (N. S.) 953, 101 Pac. 443]; *Estate of Miller,* 156 Cal. 119 [23 L. R. A. (N. S.) 868; 103 Pac. 842]; *Estate of Shirley,* 180 Cal. 400 [181 Pac. 777]; *Estate of Bergland,* 180 Cal. 629 [5 A. L. R. 1363, 182 Pac. 277]; *In re Kitchen,* 192 Cal. 384 [30 A. L. R. 1008, 220 Pac. 301].) In some of these cases it is expressly held that such a provision in a will is not against public policy, but meets with its approval. (*Estate of Hite, supra.*) But in *Estate of Bergland, supra,* where this court was considering the effect of such a clause in a will upon a legatee therein named who in good faith had attempted to probate a later spurious will, we find the following language: ''It is the policy of the law to. encourage the presentation for probate of wills of decedents in order to make the more certain that those really entitled to their bounty shall enjoy it. To place upon one under the moral, if not the legal obligation of probating the decedent's will the burden of gambling on his ability to do so successfully, no matter how sincere he may be, would be directly opposed to such policy.'' In that case this court held ''that an attempt in good faith to probate a later purported will, spurious in fact, but believed to be genuine by the party seeking its probate, does not fall within the forfeiture clause under consideration here.'' The forfeiture clause in the will in the *Estate of Bergland, supra,* read as follows: ''Fourthly, it is my positive instructions that should any one or more of the beneficiaries named in this will object to the distribution as made, or attempt to defeat the provisions of this will that said person or persons shall receive the sum of Five Dollars ($5.00) each and no more.'' ■ It is universally held, we think, that such a clause in a will, like all other forfeiture provisions, is to be strictly construed. In the *Estate of Hite, supra,* *Estate of Bergland, supra,* and *In re Kitchen, supra,* this court has expressly held that such a provision in a will should be strictly construed. In *Estate of Bergland, supra,*

this court said (180 Cal. 633): "While it is the rule in this state that forfeiture clauses of the nature of that involved here are valid and are to be given effect according to the intent of the testator, yet it is also the rule and a salutary one, that such a provision—being by way of forfeiture and condition subsequent—is to be strictly construed and not extended beyond what was plainly the testator's intent." Again in the same case, on page 635 of the opinion, we find the following statement: "As we have already said, the forfeiture clause is to be strictly construed, that is while it is valid and is to be enforced according to the ascertained intent of the testator, yet in ascertaining his intent, no wider scope is to be given to his language than is plainly required."

With the law as stated above we will pass to the consideration of the acts of the respondents as found by the court, for the purpose of determining whether they show such a breach of the forfeiture clause of the decedent's will as will subject them to the loss of the property given them by the terms of said will. As to respondent Frank A. Brown we have no hesitancy in declaring that his acts as found by the court are wholly insufficient to justify any conclusion that he had violated the terms of said forfeiture clause. In the first place, the court found as to him and also as to Herbert E. Brown that neither of them knew of the institution of said contest until after the same had been brought by the contestants. Not only is there an absence of any finding that the respondents instituted said contest, but in the foregoing findings the court expressly found that they did not even know of the contest until after it had been filed. The court found, however, that neither of these respondents, in their answer to said contest, denied the charge of undue influence alleged in the petition for said contest, and some significance is attached to this failure on their part to deny said charge as tending to show that the respondents were aiding in said contest. The facts regarding this feature of the case are that the respondents, being beneficiaries under the will, were made parties defendant along with the appellant, the executor of said will. The respondents filed their answer in said proceeding, which contained no denial of the charge of undue influence made against the appellant

by the contestants. The respondents did allege in their answer that the contestants had no interest in the estate of Mary Ellen Moore, deceased, which would entitle them to institute or maintain said contest, and it was this point upon which the case was decided in favor of the proponents of said will. (*Estate of Moore*, 65 Cal. App. 29 [223 Pac. 73].) The respondents were under no obligation, legal or otherwise, to deny in their said answer the charge of undue influence made against appellant. In fact, they may have been unable, as they understood and believed the facts of that case to be, to truthfully deny said charge. Their failure to include such a denial in their answer under these circumstances could not under any possible hypothesis be construed as a breach of any provision of said will. ■ The court further found that J. S. Lamson, the attorney for said respondents in said contest proceedings, made in open court, but without the hearing of the jury, admissions that they would like to see the contestants succeed and that the respondents herein had "a financial interest in it if they do." In the first of these admissions the attorney simply expressed the attitude of the respondents regarding the contest, and that they desired that the contestants prevail in the contest proceeding. The mere expression of a desire that the contestants succeed was not sufficient to bring the respondents under the ban of the forfeiture clause. (*In re Largue's Estate*, 198 Mo. App. 261 [200 S. W. 83]; *Haradon* v. *Clark*, 190 Iowa, 798 [180 N. W. 868].) Neither was the admission that the respondents had a financial interest in the success of the contest a matter of any probative significance under the peculiar facts of this case. We have already referred to the fact that the decedent had made a prior will to that which was admitted to probate as her last will and testament. Under this will the respondents were made her sole residuary legatees; under her second or last will and testament the appellant and said respondents were named as residuary legatees. It was the contention of the respondents that had said contest been successful they would, under the prior will, be entitled to the whole of the residue of said estate. Whether they were right in that contention, it is not necessary for us to decide. They held to that contention then and still maintain the correctness of their

position. With this belief on their part, the admission of their attorney that respondents had a financial interest in the outcome of the contest was simply a statement in accordance with the facts as he understood them. It did not in any way prejudice any right of the respondents under said will.

The further findings of the court regarding Frank A. Brown's participation in the contest of said will refer in particular to his appearance as a witness on behalf of the contestants, to his furnishing the contestants certain papers of the deceased in his possession, and to his activities in procuring A. W. Porter as a witness for the contestants. The findings show that Frank A. Brown attended the trial of the contest of the will of the decedent under a subpoena regularly issued and served upon him; that he testified to certain facts within his personal knowledge and that he produced certain papers belonging to said decedent which were then in his possession. He did not seek the contestants or their attorney for the purpose of becoming a witness in the contest proceeding. On the other hand, it was contestants' attorney who sought out Frank A. Brown and interviewed him regarding his knowledge of matters involved in the contest. It is true that Frank A. Brown submitted himself to said interview and in all probability revealed to said attorney whatever facts were within his knowledge relative to the issues involved in said contest. But it is not shown that he gave to the attorney for the contestants any information that he could not have been compelled to give in court upon being subpoenaed as a witness in said proceeding. It has been held that a legatee who testified as a witness without a subpoena at the request of the contestants and in their behalf and admitted on cross-examination that he was in sympathy with the contestants did not thereby contest the will within the meaning of a forfeiture clause similar to that in the will of Mary Ellen Moore, deceased. (*Haradon* v. *Clark, supra.*) If the ban of the forfeiture clause cannot be invoked against a legatee appearing in behalf of the contestants without subpoena, surely one who has been compelled by process of court to appear in court and testify in behalf of contestants should not be subjected to the punitive terms of such a testamentary pro-

vision. Certain papers were produced in court by Frank A. Brown, some of which were admitted in evidence on behalf of contestants. The fact that these were produced without subpoena is admitted by the respondents. We see no reason why a different rule should apply to documentary evidence than that which was applied to oral evidence in the case of *Haradon* v. *Clark, supra*. References to these papers were made in the findings and a brief description of them is made therein. Just what their materiality was in the contest proceeding does not appear from the brief reference thereto made in the findings. They were no doubt before the trial court and with full knowledge of their contents, and of their probative effect, said court found that Frank A. Brown did not attempt in any way to establish the interests of the contestants. With this finding in the record we would not be justified in assigning to the introduction of these papers in evidence any real importance. Frank A. Brown's part in procuring A. W. Porter as a witness for the contestants was occasioned more by a casual meeting of said Porter than by any studied effort on his part to assist the cause of the contestants. Although the trial was in progress at the time Porter first suggested that he be a witness on behalf of the contestants, Frank A. Brown displayed little interest and less activity in bringing about his attendance as such witness at the hearing of the contest. If Frank A. Brown had been actively interested in the contest of decedent's will he would have arranged for a meeting between Porter and McWilliams immediately upon Porter's first suggesting the subject to him. As it was, he merely referred Porter to McWilliams and on the next day when McWilliams stated to Frank A. Brown that he would like to see Porter, the latter replied that if he should see him in the next day or two he would tell him that McWilliams wanted to see him. While on his second meeting with Porter he arranged for a meeting between him and McWilliams, which led to Porter becoming a witness for the contestants, it does not appear that what he did in this regard was done with any particular desire or purpose of assisting the contestants, or that the contestants were to any extent whatever benefited by his efforts.

After a careful review of the findings relating to the acts and conduct of Frank A. Brown in connection with the contest of the will of said decedent, we are not convinced that the facts so found are sufficient to show that he either directly or indirectly in any substantial degree aided or assisted in the said contest. In reaching this conclusion we are leaving out of consideration the general finding already referred to that Frank A. Brown did not contest said will. Whether this finding is one of fact or a conclusion of law, we are satisfied that it is a correct determination relative to the acts and conduct of Frank A. Brown in connection with the contest of the will of said decedent.

█ We will now give consideration to the findings of the court which involve the acts and conduct of Herbert E. Brown in connection with the contest of the last will of Mary Ellen Moore, deceased. It will not be necessary for us to consider those findings of the court which apply to both Frank A. Brown and Herbert E. Brown alike and to which we have already given such consideration as we deem necessary. The findings which relate to the particular acts of the respondent Herbert E. Brown are that after the institution of the contest of decedent's will by the Moore heirs, he contributed various sums of money through his attorney to the contestants therein toward defraying the expense of said contest. Was this act of Herbert E. Brown a violation of the provisions of said will so as to work a forfeiture of the bequests and devises to which said Herbert E. Brown would, except for said act, be entitled to receive under said will? By an examination of the terms of said forfeiture clause it will be observed that it consists of two sentences. The first sentence contains a statement that the testatrix gives the sum of "one dollar and no more" to any person named in said will who shall "institute proceedings in anywise contesting this my last will and testament." The findings are to the effect that the contest of the will of decedent was instituted by persons other than these respondents and that these respondents did not know of the institution thereof until after said contest had been brought. It was instituted June 9, 1921, and the trial thereof was commenced August 30, 1922, and concluded September 14, 1922. The first money contributed

by Herbert E. Brown was the sum of $100 on September 4, 1922, over a year after the institution of said contest, and not until after the trial of said contest had been begun. It is clear, therefore, that Herbert E. Brown cannot be successfully charged with the institution of any proceeding contesting said will.

The second sentence of said forfeiture clause is broader in its scope than the first and includes any person contesting said will, and provides that the share of such person under the will shall go to other persons named therein. In other words, any person contesting said will shall forfeit the share of said estate to which he would otherwise be entitled thereunder. It is not contended that Herbert E. Brown was a party to any contest of said will or that he directly contested said will, but only that by furnishing money to meet the expense of said contest, he thereby aided said contest and indirectly became a party to said contest, and in so doing actually contested said will. Such a construction would be to extend the language of the will beyond the express terms thereof. Generally speaking, what one does by another he does himself, and one who aids and abets another in the commission of any act is equally responsible with the person committing the act for the results of said act. But can we apply this rule when we are construing the terms of a forfeiture which we are enjoined to strictly construe for the purpose of avoiding a forfeiture if possible? In addition to the authorities already cited herein to the effect that forfeitures are not favored by the law and should be strictly construed, we find a statement by the Supreme Court of Kansas, which we think aptly expresses the present trend of the courts regarding the subject. This statement is as follows: "It would be clearly against the policy of the law to extend the terms of a forfeiture of this character (forfeiture clause in a will similar to that in Mrs. Moore's will) beyond the express terms of the condition itself. To do so would be to encourage forfeitures by construction. Conditions of this character, as we have seen, are not regarded with favor by the courts, and will not be enforced when they can be reasonably relieved against. For the purpose of defeating a forfeiture, the condition will be construed most strictly. Public policy should be as much concerned in upholding the

right of a citizen to have his claim determined by law as it is to prevent contests of wills.'' (*Wright* v. *Cummings,* 108 Kan. 667 [14 A. L. R. 604, 196 Pac. 246].) While in *Estate of Hite, supra,* it was stated that a forfeiture clause in a will is not against public policy, in the later case of *Estate of Bergland, supra,* it was held that this rule was subject to exception and that it would not apply to the facts of the later case. We think this clause in the will of Mrs. Moore should be construed in the light of the facts of this case.

These facts show that Mrs. Moore had practically raised Frank A. Brown and Herbert E. Brown and that they had lived with her as part of her family since they were about five years old and until they were grown and had made homes for themselves. She had no children of her own and evidently regarded the respondents the same as her own children. She had made a will in which, besides a few special bequests, she had given her property to these two nephews. When practically eighty years of age she had dealings with the appellant in connection with the preparation of her income tax returns. He was not related to her in any way and had no claim upon her bounty. A short time thereafter and when she was past eighty years of age she made another will, that involved in the present action, in which a large amount of her property which in her former will she had given to these respondents was given to the appellant, and the forfeiture clause above set out, which was not in the former will, was inserted and made a part of the later will. A will made under such circumstances, that is by one of advanced years in which she takes valuable property which she had given in a former will to her own blood relations, and those who were the natural objects of her affection and bounty, and gives it to another unrelated to her by ties of blood, and without claim upon her bounty, is always, as it may well be, subject to suspicion and question as to its validity and legal execution. But if it is the valid testament of the deceased it should receive the sanction of the courts and its provisions enforced, notwithstanding the unnatural and unusual character of its terms. On the other hand, public policy demands that full and complete opportunity should be given to all interested parties to test the validity of such a testa-

mentary document, not only to protect that which may
be rightfully and legally theirs, but also to preserve the
wishes and desires of the testatrix against designing per-
sons seeking to take advantage of her age and infirmities
which are the usual result of advanced years. Any pro-
vision in the will which would tend to thwart or defeat such
a purpose should be scanned by the courts with the mi-
nutest and closest scrutiny and if found valid applied with
rigorous exactness and precision.

While we are not prepared to hold the forfeiture clause
in the will of Mrs. Moore absolutely void as against public
policy, we are of the opinion that public policy and the
cause of right and justice require that its provisions
should receive the strictest construction and interpretation
by this court, and that unless the acts of the respondents
come strictly within the express terms of the punitive clause
of the will, we will not declare any breach thereof. Her-
bert E. Brown did not institute any contest of the will of
decedent. The most that can be said of his relation to
said contest is that he contributed toward the expense of
said contest after it had been instituted and after the trial
of said contest had begun. He may have assisted others
in a contest, but to hold that such acts of assistance are
within the forfeiture clause of the will would be to extend
the terms of this clause beyond the express provisions and
thus not only to encourage but actually to permit for-
feitures by construction. This the courts have refused to
do. We are, therefore, of the opinion that the acts of
Herbert E. Brown were not sufficient to bring him within
the terms of the forfeiture clause of said will.

As against this holding the appellant has cited the fol-
lowing authorities from jurisdictions outside of this state:
*Donegan* v. *Wade*, 70 Ala. 501, *In re Stewart's Will*, 1
Con. Sur. 412 [5 N. Y. Supp. 32], and *Kayhart* v. *White-
head*, 77 N. J. Eq. 12 [76 Atl. 241]. The facts in these
cases differ materially from those presented in the present
action. They are what might be termed extreme cases,
and we think are not applicable to the present litigation.

Besides, it may be seriously questioned whether there
was any legal contest ever filed against said will. While
we have referred to the proceedings instituted by the Moore
heirs as a contest of said will, the trial court held that they

had no legal standing that would entitle them to institute a contest of said will and dismissed the proceedings instituted by them. The District Court of Appeal affirmed the order of dismissal upon the ground that the contestants were without any legal right to institute a contest of the will of said decedent. There was, therefore, in fact no legal contest ever filed against said will, and the respondents could not be held to have been parties even indirectly to a proceeding which in fact had no legal existence. Moreover, the action of the trial court dismissing the proceeding instituted by the Moore heirs was in response to the answer to these respondents, which answer alleged the Moore heirs had no interest in said estate, and, therefore, could not legally institute a contest of the will of said deceased.

The views herein expressed make it unnecessary for us to decide a number of other questions raised by the appellant in his brief and oral argument. After the rendition of the judgment herein the appellant moved the court under sections 663 and 663a of the Code of Civil Procedure for an order setting aside said judgment and for the entry of a judgment in favor of the plaintiff upon the findings. This motion was denied and appellant has appealed from said order. The order denying said motion is affirmed and the judgment herein is also affirmed.

Richards, J., Langdon, J., Seawell, J., Waste, C. J., and Preston, J., concurred.

Rehearing denied.